IN RE: GEORGE A. GUESS, M.D., RESPONDENT

No. 8710SC618

(Filed 5 September 1989)

**Physicians, Surgeons, and Allied Professions § 6.2— use of homeopathic remedies—deviation from acceptable and prevailing medical practice—no harm to patients or public—revocation of license improper**

Before a physician's license to practice his profession in this State can be lawfully revoked under N.C.G.S. § 90-14(a)(6) for practices contrary to acceptable and prevailing medical practice, it must also appear that the deviation complained of posed some threat of harm either to the physician's patients or to the public; therefore, the trial court did not err in vacating the Board of Medical Examiner's order which revoked respondent's license to practice medicine because he utilized homeopathic medicines in his practice where the Board neither charged nor found that respondent's departures from approved and prevailing medical practices either endangered or harmed his patients or the public.

ON remand from the North Carolina Supreme Court by a decision reported at 324 N.C. 105, 376 S.E.2d 8 (1989).

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Michael E. Weddington and Susan M. Parker, for petitioner appellant.*

*Manning, Fulton & Skinner, by Howard E. Manning, Jr., for respondent appellee.*

PHILLIPS, Judge.

This appeal by the North Carolina Board of Medical Examiners is from the judicial review of its decision sanctioning the respondent physician. When it was first here we declined to determine it, *In re Guess*, 89 N.C. App. 711, 367 S.E.2d 11 (1988), because G.S. 90-14.11, still in the books, directs that decisions of the North Carolina Board of Medical Examiners, after being reviewed by the Superior Court, be appealed to the Supreme Court, and because several years after G.S. 7A-27(b) authorized this Court to receive appeals from the judicial review of administrative decisions our Supreme

Court in *In re Wilkins*, 294 N.C. 528, 242 S.E.2d 829 (1978), accepted an appeal from the Superior Court's review of a decision by the North Carolina Board of Medical Examiners and stated that it had jurisdiction to do so. Our decision was vacated by the Supreme Court, which held that this Court had initial appellate jurisdiction over the appeal because the enactment of G.S. 7A-27(b) in 1967 in effect repealed G.S. 90-14.11, and we herewith determine it as directed.

The pertinent facts are few and essentially undisputed. Following notice and a hearing the Board of Medical Examiners of the State of North Carolina conditionally revoked the license of Dr. George Albert Guess, a specialist in family medicine situated in Asheville, to practice medicine in this state. The action was taken under G.S. 90-14(a), which authorizes the Board to suspend or revoke licenses to practice medicine for several improper activities or practices, one of which is—

> (6) Unprofessional conduct, including, but not limited to, any departure from, or the failure to conform to, the standards of acceptable and prevailing medical practice, or the ethics of the medical profession, irrespective of whether or not a patient is injured thereby, . . .

Proceeding under this provision the Board charged Dr. Guess with unprofessional conduct in that he customarily treated patients with preparations known generally as "homeopathic medicines," a practice not in accord with the standards of acceptable and prevailing medical practice in this state. From the evidence presented at the hearing the Board found that the charge had been sustained; *viz*, that in treating patients Dr. Guess customarily administered "homeopathic medicines" to his patients and that such administration was contrary to acceptable and prevailing medical practices in this state. From these findings the Board concluded that Dr. Guess' utilization of homeopathic medicines in his practice was unprofessional conduct under G.S. 90-14(a)(6) and revoked his license to practice, but stayed the revocation upon the condition that he not use homeopathic medicines in his practice and otherwise conform to acceptable and prevailing medical practice in this state. Following Dr. Guess' appeal to the Superior Court the order was vacated upon findings and conclusions that the Board's findings of fact and conclusions of law were not supported by competent evidence and were arbitrary and capricious.

The Superior Court's findings and conclusions as to the Board's findings of fact have no basis, as the Board's principal findings of fact are not only supported by competent evidence, they are essentially undisputed. Dr. Guess himself testified that he frequently used homeopathic medicines in treating patients, several qualified North Carolina physicians testified that such use is contrary to the "standards of acceptable and prevailing medical practice" in this state, and no doctor testified otherwise; indeed, so far as the record indicates Dr. Guess is the only physician in North Carolina that administers homeopathic medicines to patients. Nor is the Board's conclusion of law that such departure from acceptable and prevailing medical practice was unprofessional conduct and a ground for punishment arbitrary and capricious, as the court ruled, for the Board's conclusion is based upon the provisions of G.S. 90-14(a) which explicitly state that "any departure" from the standards of acceptable and prevailing medical practice in this state is unprofessional conduct and a ground for suspending or revoking a physician's license.

Nevertheless, we believe that the order vacating the Board's order is correct and we affirm it. We do this because the Board neither charged nor found that Dr. Guess' departures from approved and prevailing medical practice either endangered or harmed his patients or the public, and in our opinion the revocation of a physician's license to practice his profession in this state must be based upon conduct that is detrimental to the public; it cannot be based upon conduct that is merely different from that of other practitioners. For the General Assembly created the Board of Medical Examiners to "properly regulate the practice of medicine and surgery" in this state, G.S. 90-2; and since "[t]he State can only regulate for the protection of the public," *State v. McKnight*, 131 N.C. 717, 724, 42 S.E. 580, 582 (1902), its purpose could have only been to protect the public. Thus, implicit in the provisions granting the Board power to revoke a medical license for practices not in conformity with the standards of acceptable and prevailing medical practice in the state is the requirement that the nonconforming practices endanger or harm the public in some way. Without that implicit requirement G.S. 90-14(a)(6) would permit the Board of Medical Examiners to suspend the license of any physician whose methods or practices, though harmless or even beneficial to his patients and the public, differ in some particular from those of most practitioners. Such unqualified power by an administrative

agency would be contrary to the public interest, and was not the legislature's to give in any event.

Emphasizing that G.S. 90-14(a)(6) expressly makes it unnecessary to establish that a patient was injured by any unapproved medical practice and makes departures from approved and prevailing medical practice unprofessional conduct and a ground for sanctions, the Board contends that the legislature intended thereby to require it to establish only a departure from accepted and prevailing medical practice before suspending or revoking a physician's license. This argument is rejected. In not making injury to a patient an element of improper medical practice that warrants suspension from the practice the General Assembly only recognized the commonly known fact that not every improper or even irresponsible act of a physician results in injury to a patient; and that it did not go farther and provide that potential harm to the public need not be established is an indication that it understood that innocuous departures from prevailing medical practice cannot be a ground for suspending or revoking a physician's license.

Our holding, therefore, is that: Before a physician's license to practice his profession in this state can be lawfully revoked under G.S. 90-14(a)(6) for practices contrary to acceptable and prevailing medical practice that it must also appear that the deviation complained of posed some threat of harm to either the physician's patients or the public. This decision, of course, is no bar to any future proceeding by the Board against Dr. Guess or any other medical practitioner based upon charges and evidence that practices or conduct contrary to approved and prevailing medical practices in this state have exposed either persons or the public to harm.

Affirmed.

Judges WELLS and PARKER concur.